UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|   |   |   |
|---|---|---|
| IN RE: | * | Case No. 07-51027 |
|  | * |  |
|  | * | Adv. No. 08-05031 |
| MARLYNN RENEE O'NEAL | * |  |
|  | * | Akron, Ohio |
|  | * |  |
|  | * | May 12, 2009 |
| UNITED STATES TRUSTEE | * |  |
| v. | * |  |
| COUNTRYWIDE HOME LOANS, INC. | * |  |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MARILYN SHEA-STONUM
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:


    DEAN WYMAN, ESQ.
    PAUL RANDEL, ESQ.
    For Plaintiff, U.S. Trustee

    THOMAS CONNOP, ESQ.
    ROBERT FOLLAND, ESQ.
    For Defendant, Countrywide Home Loans, Inc.




Transcribed by:
- - - - - - - - - - - - - - -
Legal Electronic Recording, Inc.
5230 St. Clair Avenue
Cleveland, Ohio  44103
(216) 881-8000  Fax 881-DEPO (3376)


Proceeding  recorded  by  electronic  sound  recording,
transcript produced by transcription service.
Job No. 09E4105B

Electronically signed by Marc Eppler (501-186-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 1 of 52    a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1           THE CLERK:  This United States Bankruptcy

2      Court is now in session, the Honorable Marilyn Shea-

3      Stonum presiding.

4           THE COURT:  Please be seated.

5         Good morning.  On the docket this morning are

6      final arguments in the trial in the adversary

7      proceeding 08-5031.  I'll take appearances of counsel.

8           MR. WYMAN:  Good morning, Your Honor.  Dean

9      Wyman and Paul Randel representing Daniel M. McDermott,

10     United States Trustee.

11          MR. CONNOP:  Your Honor, good morning.  Tom

12     Connop and Rob Folland representing Countrywide Home

13     Loans, Inc.

14          THE COURT:  And yesterday I inquired of the

15     U.S. Trustee who has the burden of proof whether he

16     wished to -- whether counsel wished to go first or

17     second in final argument and he chose second, so

18     Countrywide is up.

19          MR. CONNOP:  Thank you, Your Honor.

20        On several occasions the Court has commented that

21     this is an unusual proceeding and indeed it is.  In an

22     unprecedented move, the U.S. Trustee has chosen to sue

23     Countrywide for sanctions and injunctive relief in an

24     adversary proceeding and we'd like to remind the Court

25     the context of this adversary proceeding.  It involves

Electronically signed by Marc Eppler (501-186-541-1294) a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1    a single case, single Chapter 13 case of Ms. Marlynn

2    O'Neal and two pleadings filed in that case, one of

3    which was an objection to the proof of claim, a standby

4    final order.  The second was an objection to

5    confirmation that was voluntarily withdrawn.

6        The issue of liability the Court has determined.

7    We are now here on whether or not the United States

8    Trustee has met its burden of proof that a remedy

9    against Countrywide is warranted.

10       There has been no evidence presented in this

11   proceeding that the situation in the Marlynn O'Neal

12   case has happened in any other case in this district or

13   that there is a present threat that it is occurring now

14   or will occur in the future.  The U.S. Trustee has

15   proffered into evidence three opinions with the

16   indication that they believe these opinions evidence

17   that monetary sanctions will not adequately deter

18   Countrywide from the conduct in the Marlynn O'Neal

19   case.  Those three cases involve the conduct of a

20   property management service and a broker over five

21   years ago that resulted in $7,500 in sanctions.  That's

22   not to excuse the conduct found by the Court, but that

23   is the circumstance presented in the opinion.

24   The second involves unknown conduct of outside counsel

25   which resulted in a show cause order involving a $1,000

Electronically signed by Marc Eppler (501-786-541-1294)     08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 3 of 52     a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1    sanction, and as Mr. Smith testified, outside counsel

2    didn't inform Countrywide of that circumstance at all.

3         The final case involved the conduct of counsel in

4    multiple cases for multiple mortgage companies and

5    against whom the sanction was imposed.  Countrywide was

6    not sanctioned in that case.  When extrapolated over

7    the current portfolio of cases handled now by

8    Countrywide, those three opinions constitute 23/10,000

9    of one percent of that portfolio.

10        What the evidence has shown is that completely

11   outside the context of the facts presented in the

12   Marlynn O'Neal case Countrywide has undertaken to

13   improve its bankruptcy servicing practices.  These

14   practices have been improved in part to deal with what

15   the Court has noted and I think what is common

16   knowledge around the country in bankruptcy, the

17   unprecedented rise in the number of Chapter 13 cases.

18   Countrywide, as Mr. Smith has testified, has created

19   the office of ombudsman to communicate with counsel for

20   Debtors and try to resolve matters that have escalated

21   beyond the ordinary disputes that occur in the context

22   of the Chapter 13 case.  It's created a validation team

23   to review proofs of claim, motions for relief from stay

24   and conduct discharge audits of completion of a Chapter

25   13 case.  They participate in National Data Center.

Electronically signed by Marc Eppler (501-786-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 4 of 52    a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1    They have incurred the cost of joining PACT,

2    technological organizations that better assist

3    Countrywide in accounting for Chapter 13 payments.

4    They've adopted many of the NACTT best practices which

5    are recommended practices.  They're not mandated and

6    indeed not all are permitted nationally in Courts

7    around the country, yet Countrywide voluntarily adopted

8    many of those practices.

9        Countrywide has invested in technological

10   enhancements to its system which will further better

11   able it to track Chapter 13 payments.  It's expanded

12   its training programs.  It has expanded and clarified

13   its policies and procedures.

14       The evidence reflects that Countrywide has

15   committed over three million dollars in expenditures to

16   enhance its bankruptcy servicing.  This commitment was

17   voluntary and done of its own initiative.

18       There's also been evidence of an audit

19   commissioned by Countrywide's outside counsel.  Over

20   six million dollars has been committed to that process.

21       The U.S. Trustee has proposed as part of the

22   remedy the imposition of a Court-ordered audit of

23   pleadings, proofs of claim filed in this district for a

24   prospective period of a year.  Based on the cost

25   incurred by Countrywide to date in this independent

Electronically signed by Marc Eppler (501-186-541-1294)    08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 5 of 52    a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1    audit, the amount that Countrywide would be required to

2    commit is estimated to be between seven and a half and

3    $15 million based on the current number of loans that

4    it is servicing.  This does not include the staging and

5    startup costs which may run as high as three million

6    dollars.

7         The Court has been concerned with the conduct of

8    counsel and its interface with Countrywide leading to

9    the error in filing the proof of claim in Ms. O'Neal's

10   case.  The tes --

11              THE COURT:  I would simply ask that you

12   respect the liability opinion that I entered.  It was

13   not a single error.  There was -- there was a parade of

14   errors.

15              MR. CONNOP:  I certainly respect Your Honor's

16   opinion.

17              THE COURT:  Thank you.

18              MR. CONNOP:  We're discussing remedies at

19   this point and I want to point out that the conduct of

20   counsel that the Court was concerned with is not

21   consistent with the practice of Countrywide in dealing

22   with counsel it retains.  Countrywide expects

23   communication, responsiveness and accuracy.

24              THE COURT:  And I would also ask that you --

25   you think about what the record evidence is in this

1    case and what evidence do I have with respect to the

2    relationship between Countrywide and counsel.  I have

3    not been given any evidence of the forms of contracts

4    that are entered into between Countrywide and its

5    counsel, so please, I mean this in all seriousness,

6    please recount for me what evidence we have in the

7    record with respect to the establishment of the

8    attorney/client relationship.

9         MR. CONNOP:  Mr. Smith's testimony, Your

10   Honor, unrebutted.

11        The Court having found liability, the U.S. Trustee

12   now seeks mandatory injunction which commands

13   Countrywide to verify all pleadings it files before

14   this Court.  It would command Countrywide to employ an

15   auditor who would audit every proof of claim filed in

16   the Northern District of Ohio, among other things, for

17   the next year, and for every case that is filed within

18   the next year.  This auditor would, I quote, supervise

19   and review certain verifications or all the

20   verifications that are to be required and would be

21   engaged at Countrywide's expense.  This is akin to the

22   appointment of an examiner over a non-Debtor.  It is

23   not required by the Code.  Indeed it's not permitted by

24   the Code.

25        The third thing is the expansion or the

Electronically signed by Marc Eppler (501-186-541-1294)

1    notification of the ombudsman program essentially to

2    every Debtor that files for bankruptcy in the Northern

3    District of Ohio.  In the abstract that seems like a

4    reasonable thing to do.  The problem in practice is

5    that Countrywide has communicated that to the proper

6    parties, we believe, who can communicate with

7    Countrywide concerning problems.  That would be Chapter

8    13 Trustees and counsel for Chapter 13 Debtors.  The

9    proposal that the United States Trustee advances, we

10   are concerned, will invite direct communication by

11   Debtors who are represented by counsel who are to look

12   out after their interests as the Court has noted Mr.

13   Whittington did.  It will intrude potentially into the

14   ethical obligations that Countrywide must refrain from

15   communicating with people that it knows to be

16   represented by counsel.

17        Your Honor, no Court has presumed to take the

18   action suggested by the United States Trustee.  There

19   is no statutory basis for this remedy.  There is no

20   equitable basis for this remedy.  The remedy exposes

21   Countrywide to an expense ranging from seven and a half

22   million to $15 million or more.  And this is imposed in

23   the context of a single loan in which the error leading

24   to the filing of the proof of claim and the objection

25   were unquestionably a human error, a coding error.  No

Electronically signed by Marc Eppler (501-786-541-1294) 08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 8 of 52

1    cost was imposed upon the Debtor and no code provision

2    was violated.

3         THE COURT:  I want to stop you there, Mr.

4    Connop, because I think there is -- there's a

5    presumption in your argument that distresses me.  In a

6    way this is an economic question.  Most things in

7    bankruptcy are economic questions.  And because

8    Debtor's counsel agree to represent the Debtor for a

9    flat fee, you are arguing that there was no cost to the

10   Debtor.  Do you acknowledge that there was a cost to

11   Debtor's counsel?

12        MR. CONNOP:  Under Local Rules of this Court,

13   Your Honor, Debtor's counsel is obligated to take the

14   action that he did in responding to this proof of claim

15   and the objection to confirmation.

16        THE COURT:  Can you tell me which Local Rule

17   that is?

18        MR. CONNOP:  Actually it's the contract that

19   the Court requires that the Debtor's counsel engage in

20   in terms of its -- I believe it's the attorney

21   agreement.

22        THE COURT:  Rights and responsibilities.  But

23   that -- the Court does not require counsel do that

24   within the flat fee.  It just requires that there be an

25   understanding.  In this case Mr. Whittington took on a

1  case where there did not appear to be any mortgage

2  issues and he took it on for $2,000.  And, in fact,

3  there weren't any legitimate mortgage issues, but he

4  had to deal with them.  He had to deal with mortgage

5  issues and he dealt with them.  And do you not

6  recognize that there was an offloading to Debtor's

7  counsel from Countrywide of the expense of

8  Countrywide -- had Countrywide organized its records in

9  a way that this issue was not raised in this case, then

10  there would be no -- Mr. Whittington would not have had

11  to devote the time that he had to devote to this issue.

12  Do you not recognize his lost opportunity cost in this

13  situation?

14          MR. CONNOP:  Mr. Whittington had to occur 50

15  minutes of time in responding to the proof of claim and

16  the objection to confirmation and Mr. Whittington is

17  not a party to this proceeding.  This is a lawsuit.

18  There's a lawsuit filed by the United States Trustee

19  against Countrywide Home Loans.

20          THE COURT:  And what are the issues in the

21  lawsuit?

22          MR. CONNOP:  The issues are whether or not

23  Countrywide engaged in bad faith conduct that would

24  abuse the judicial process and justify sanctions.

25          THE COURT:  Abuse of process.  Abuse of

Electronically signed by Marc Eppler (501-188-541-1294)     08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 10 of 52     a69b4c78-9fb3-496a-ae5c-c3ace2ab78c8

1    process is one of the issues in this lawsuit.

2              MR. CONNOP:  Right.  I agree.

3              THE COURT:  Thank you.

4              MR. CONNOP:  And the authorities that we have

5    cited in connection with the legal standards, we

6    believe, require cost for loss to the Debtor, not to

7    the Debtor's counsel, but to the Debtor.  And there

8    wasn't.

9        Now, the standards in this Circuit for the

10   imposition of an injunction are that there be a real

11   and immediate threat of future injury with continuing

12   present adverse effects.  We draw Your Honor's

13   attention to the Grendel case, a 2000 case out of the

14   Sixth Circuit, which requires that there be a

15   significant threat of future harm.  The Sixth Circuit

16   noted that an injury that has occurred in the past will

17   not support a case or controversy for future relief if

18   unaccompanied by any continuing adverse effects.  We

19   believe that the standard set forth in Grendel has not

20   been met by the United States Trustee.

21       I turn next to the general equitable use of

22   Section 105 of the Code and I would ask the Court to

23   consider Norwest Bank of Worthington versus Ahlers, a

24   familiar case out of the United States Supreme Court in

25   1988, which noted in the context of a Chapter 11 case

Electronically signed by Marc Eppler (501-188-541-1294)     08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 11 of 52     a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1    where the Debtor sought to confirm a plan without

2    contributing new value to the matter other than their

3    continued work and efforts in the organizing of the

4    family farm.  The Supreme Court noted that whatever

5    equitable powers remain in the Bankruptcy Court must

6    and can only be exercised within the confines of the

7    Bankruptcy Code.

8         The Court has found in its ruling dealing with

9    liability that Countrywide has violated Rule 9011 and

10   Section 105(a).  Section 105(a) is not a matter in

11   which obligations are imposed upon a creditor in a

12   case.  It enables the Court to utilize that section to

13   enforce other sections of the Code.  No Code provision

14   supports the relief that the U.S. Trustee seeks.

15        Apparently, while the U.S. Trustee is no longer

16   seeking or has advanced monetary sanctions

17   specifically, the injunctive relief that they have

18   requested is the functional equivalent.  As I've noted,

19   they seek to impose an expense to conduct a hitherto

20   unrecognized audit obligation on a private corporation,

21   the cost of which would exceed certainly $7.5 million.

22   Your Honor, this is or would be a punitive monetary

23   sanction.

24        Now, there's little question that the economy at

25   large has recognized that there is a troubling

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 12 of 52    a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1    situation with the number of defaulted home mortgages.

2    But I would quote from the Ahlers' opinion which

3    recognized as well that in 1988 there was a problem

4    with the economics of the family farm.  The Court there

5    said family farms hold a special place in our nation's

6    history and folklore.  Respondents and amici paint a

7    grim picture of the problems facing farm families today

8    and present an eloquent appeal for action on their

9    behalf yet relief from current farm woes cannot come

10   from a misconstruction of the applicable bankruptcy

11   laws but rather only from action by Congress.

12        Your Honor, if there is an appropriate remedy for

13   what we submit is a single instance of alleged

14   misconduct, it is for Congress to determine what the

15   remedy would be.  We respectfully request that the

16   Court deny the relief requested by the United States

17   Trustee in this matter.

18              THE COURT:  Mr. Connop?

19              MR. CONNOP:  Yes, Your Honor.

20              THE COURT:  Do you not acknowledge that

21   Congress has charged the U.S. Trustee program with the

22   role of watchdog of the bankruptcy process in some

23   ways?  And I say this somewhat reluctantly because

24   Bankruptcy Judges have probably a love-hate

25   relationship with the U.S. Trustee program.  But do you

LEGAL ELECTRONIC RECORDING, INC. 216-881-8000

1   not acknowledge that Congress has said to the U.S.

2   Trustee program we can't anticipate every problem.  The

3   world changes.  We need -- we need or we have decided

4   that it is useful, Congress has decided that it's

5   useful to have a program such as the U.S. Trustee

6   program which it's assigned various watchdog

7   responsibilities.  And in the exercise of that watchdog

8   role the U.S. Trustee program has said we're concerned,

9   we're very concerned about Countrywide, now BAC,

10  Countrywide, which was appropriately named, operating

11  countrywide, filing all sorts of pleadings in

12  Bankruptcy Courts across the country, that we're

13  concerned that their systems need to produce accurate

14  information on which those pleadings are based.  What

15  do you think about that -- about that view of the

16  current statutory landscape?

17          MR. CONNOP:  We visited that with Your Honor

18  at the time we filed a motion to dismiss.  Your Honor

19  denied that motion.  But in direct response to your

20  question, they don't have that power and we've tried

21  that before Judge Crystal in the Southern District of

22  Florida determined that they did not have that power.

23  On Friday we argued the U.S. Trustee's appeal of that

24  decision to the United States District Court for the

25  Southern District of Florida.  Most certainly I

Electronically signed by Marc Eppler (501-188-541-1294)

1   advocate that they do not have that power.  It is not

2   outlined in Section 586(a) of Title 28, the organic

3   statute that created them, nor is it provided in the 28

4   separate Bankruptcy Code sections that deal with United

5   States Trustees' power.  Congress was able to empower

6   them to do certain things.  This is not one of them.

7   And that I continue to maintain.  If Congress had

8   intended the U.S. Trustee to take such actions, to sue

9   private parties, they would have included that in the

10  more than 35 specific statutory authorizations.  It is

11  wholly absent.  Their watchdog role is one word from

12  legislative history and they cannot found an

13  enforcement mechanism based on one word from

14  legislative history.

15          THE COURT:  Well then, what -- what -- what

16  is the appropriate mechanism?  Let's -- I'm going to --

17  I'm going to give you a hypothetical.  What is the

18  appropriate mechanism, and I'm -- this is a

19  hypothetical.

20          MR. CONNOP:  I understand.

21          THE COURT:  This is not -- this is not my

22  view necessarily of -- of Countrywide, now BAC.  And by

23  the way, I want to come back to that before -- before

24  you sit down.  But if there were a situation where the

25  philosophy of an entity that filed lots of claims in

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 15 of 52    a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1    bankruptcy was, well, you know, we can just file the

2    claim and then if no one objects, we're golden, and if

3    someone objects, we can withdraw, and they're doing

4    that across the country, how is that problem to be

5    dealt with?

6              MR. CONNOP:  Your Honor, mortgage companies

7    are governed by various federal agencies and state

8    agencies that play a role in how their practices are

9    performed.  Those include the FTC, State Attorneys

10   General, the Comptroller of the Currency in some cases.

11   Those agencies, those state officers have been

12   empowered either by state law or by federal law to take

13   actions against corporations.  The United States

14   Trustee has not.

15       In this hypothetical, if this Court is presented

16   with an improper proof of claim and it is challenged by

17   the Debtor, then certainly this Court has jurisdiction

18   to adjudicate that claim.  If it was found to be filed

19   in error, you certainly can take whatever action is

20   permitted by the statutes and rules and case law to

21   adjudicate that.  If it is filed in violation of Title

22   28, you can certainly take action against that for

23   intentional misrepresentation.

24              THE COURT:  Mr. Connop, look at -- look at

25   the scale which is now confronting Bankruptcy Courts.

Electronically signed by Marc Eppler (501-188-541-1294)

1    Look at the scale.  When I became a Bankruptcy Judge in

2    1994 there were about 2,000 cases filed in Akron.  This

3    year there will be somewhere between six and 7,000

4    cases filed, assuming that the economy doesn't become -

5    - that the bad cold that it has right now doesn't

6    become pneumonia.  One can just hope that that's the

7    case.

8        The one-off issue with respect to objections to

9    claims, it is useful.  It's very useful.  But if there

10   is a systemic issue, are you suggesting that Courts do

11   not have the ability to try to address that in a

12   proactive manner that allows the judicial resources not

13   to be misspent?

14            MR. CONNOP:  Your Honor, what we are here on

15   is one case and it concerns me that I believe the Court

16   and the U.S. Trustee are trying many other cases, but

17   they are not before the Court.  This is not the vehicle

18   to award the relief that the United States Trustee

19   requests.  We are here in a single action adversary

20   proceeding involving a single Chapter 13 case.

21            THE COURT:  Well, yesterday Mr. Smith

22   testified initially, without qualification, that BAC

23   had adopted the best practices that came out of this

24   joint task force.  Then upon closer inspection of what

25   those best practices were, Mr. Smith said, well, some

Electronically signed by Marc Eppler (501-188-541-1294)

1    had been adopted.  Some had not.  And as you've noted,

2    these are right now voluntary.

3         I am disinclined toward the kind of relief that

4    the U.S. Trustee has requested in terms of after-the-

5    fact audits.  If we're going to spend money, I want to

6    see money spent where it can be -- and resources, more

7    importantly, I want to see resources deployed where

8    they can -- where they can cause the most significant

9    positive effect.  Mr. Smith's testimony about the

10   training of the bankruptcy technicians at Countrywide

11   really causes me concern.

12        This is framed as a lawsuit.  One could hope that

13   everyone in this process is interested in seeing

14   Bankruptcy Court resources deployed in the most

15   efficient and fair manner for all parties concerned.

16   Countrywide has a big stake in seeing the bankruptcy

17   processes operate efficiently and fairly.

18   Countrywide/Bank of America.  Bank of America.

19        When I read in the lay press that Bank of America

20   acquired Countrywide I believe after the acqui -- after

21   the filing of this suit, I thought well, you know,

22   one -- again, one can hope that there might be a

23   resolution of this case in which there are no losers.

24   Imagine how terrific I felt yesterday when I was

25   inquiring about whether it would be useful for people

Electronically signed by Marc Eppler (501-188-541-1294)     08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 18 of 52    a69b4c28-9fb3-49ea-ae5c-c3ace2ab78c8

1    to talk and I was told, well, there are talks going on.

2    We just can't tell you amongst whom and why and again,

3    getting back to resources.  There's a lot of

4    competition for this particular Judge's attention.

5        Is there any reason to hope that the problems, and

6    there are problems, the problems that exist in the

7    assertion of mortgage holders' claims in Chapter 13 by

8    Countrywide could not be significantly improved through

9    a look at what I describe as the front end, the front

10   end of Countrywide, now BAC's practices perhaps through

11   the lens of that joint task force, the National

12   Association of Chapter 13 Trustees and the National

13   Association of Consumer Bankruptcy Attorneys?  Lawyers

14   tend to think of things, particularly litigators, tend

15   to think of things in very adversarial terms.  But

16   this -- well, and if you think of it in adversarial

17   terms, then it becomes adversarial.

18       The record in this case suggests that there are

19   still very significant problems at issue.  Yesterday

20   Mr. Smith testified with some pride about the fact that

21   there would be adoption of this program that will now

22   allow accounting for pre and post-petition or proper

23   application for pre and post-petition payments and

24   talked about the expense associated with that.  That's

25   something that should have happened a decade ago.  I

Electronically signed by Marc Eppler (501-188-541-1294)

a69b4c78-9fb3-49da-ae5c-c3ace2ab78c8

1   welcome it.  I think it's wonderful that it's going to

2   perhaps finally appear.  But is there not -- is there

3   not something to be gained to have input from other

4   regular players in the system as that's developed?

5           MR. CONNOP:  Your Honor, I think any

6   opportunity, voluntary opportunity, to improve the

7   system is useful, and we have presented evidence to the

8   Court that Countrywide has engaged in voluntary

9   improvements to its systems in order to accomplish

10  that.  Its representatives participate with the

11  National Association of Chapter 13 Trustees.  It's

12  personnel have, as I indicated, worked to modify and

13  improve its procedures.  But again, I have to come back

14  to what is before the Court.  And the Court is charged

15  and the U.S. Trustee is charged with performing

16  specific duties within the statutory construct of what

17  its powers are and what the Court may do within the

18  confines of a single adversary proceeding.  We didn't

19  choose this playing field.  The United States Trustee

20  chose to file this lawsuit and it is this lawsuit that

21  we are trying.  And I submit, Your Honor, that there

22  has been no evidence to suggest that the remedy sought

23  by the United States Trustee is equivalent to the

24  matter that is before the Court.  Thank you.

25          THE COURT:  Thank you.

Electronically signed by Marc Eppler (501-188-941-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 20 of 52    a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1              MR. WYMAN:  May I begin, Your Honor?

2              THE COURT:  You may.

3              MR. WYMAN:  In January of 2009 an article

4    appeared in the Texas Law Review by Professor Porter.

5    The Court I believe yesterday mentioned Professor

6    Porter, at 87 Texas Law Review 121.  And Professor

7    Porter noted as follows, in part.  Servicing problems

8    also jeopardize the ability of Courts and Trustees to

9    administer bankruptcy cases correctly and fairly.  And

10   Professor Porter continued, if serving -- servicing

11   abuse is routine, this also weakens our collective

12   confidence in the integrity of the bankruptcy system.

13      Against this backdrop this morning the United

14   States Trustee will focus upon three themes in his

15   request for relief.

16             THE COURT:  I'm going to welcome that

17   argument but first I want you to address the basic

18   issue of the ability of the U.S. Trustee under the

19   current statutory system to seek the relief that it's

20   seeking in this case.

21             MR. WYMAN:  The United States Trustee

22   certainly has broad standing under 307 of the

23   Bankruptcy Code to be heard in any case or proceeding.

24   That standing has been reaffirmed by the Sixth Circuit

25   Court of Appeal certainly as far back as the Revco

Electronically signed by Marc Eppler (501-188-541-1294)

1   decision.

2          THE COURT:  Now, that's in the main case.

3          MR. WYMAN:  Correct.  Now, under 28 USC

4   Section 586 there is also broad standing provided to

5   the United States Trustee to supervise and the

6   administration of cases and Trustees in bankruptcy

7   cases.  So there is statutory authority for the United

8   States Trustee to seek the relief the United States

9   Trustee is seeking in this case.

10         THE COURT:  And can you more specifically

11  point to the provisions in Title 28 on which you rely?

12         MR. WYMAN:  Under 28 USC Section 586, in

13  part, each United States Trustee within the region for

14  which the United States Trustee is appointed shall and

15  again, under (a)(3), supervise the administration of

16  cases and Trustees in cases under 7, 11, 12, 13 or 15

17  of Title 11.  That is one specific section that would

18  provide authority for the United States Trustee to seek

19  the action that it is seeking in this case, again,

20  along the lines of the broad standing provided to the

21  United States Trustee under the Revco decision, under

22  Section 307 of Title 11.

23      May I continue?

24         THE COURT:  Yes.

25         MR. WYMAN:  The three themes this morning

Electronically signed by Marc Eppler (501-188-541-1294)
a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1    would be responsibility, verification, notice.  And the

2    implementation of these requested remedies in this case

3    will further the goal and objective of the

4    establishment and maintenance of accurate records by

5    Countrywide Home Loans, Inc. and its successor, BAC

6    Home Loans Servicing, LP.

7        The relief requested by the United States Trustee

8    is remedial.  The United States Trustee is not

9    requesting that the Court impose any monetary penalty

10   upon Countrywide Home Loans, Inc. or its successor.

11   Rather, the United States Trustee is requesting that

12   the Court exercise its discretion to impose the

13   following remedies.  In general, proofs of claim and

14   other Court filings by Countrywide and its successor,

15   BAC Home Loans Servicing, LP, be attested to by a

16   responsible officer of Countrywide or BAC Home Loans

17   Servicing, LP.  In general, an audit procedure be

18   implemented under which proofs of claim can be audited

19   in pending Chapter 13 cases in the Northern District of

20   Ohio.  The purpose of this audit would be to determine

21   if there are any other cases in which Countrywide has

22   made errors.  The time frame for this relief is one

23   year.  After a one-year period the United States

24   Trustee requests that a hearing be held to determine if

25   the relief imposed should continue.  The parties to

Electronically signed by Marc Eppler (501-188-541-1294)

1    this order should be Countrywide Home Loans, Inc.,

2    Countrywide Home Loans Servicing, LP and BAC Home Loans

3    Servicing, LP.  BAC Home Loans Servicing, LP should be

4    made a party because it is the successor entity to

5    Countrywide Home Loans, Inc.  As set forth in the

6    stipulation, Countrywide Home Loans, Inc. has

7    transferred the servicing rights to loans it previously

8    serviced or it has contracted with BAC Home Loans

9    Servicing, LP to subservice those loans on its behalf.

10   Furthermore, the substance of Mr. Smith's testimony was

11   that future proofs of claim in the Northern District of

12   Ohio would be filed in the name of BAC Home Loans, Inc.

13   for cases in which Countrywide formerly serviced the

14   loans.  Mr. Smith did not identify any other entity

15   that would be filing those proofs of claim.  In

16   addition, Mr. Smith's testimony reveals that the

17   operations of Countrywide Home Loans, Inc. basically

18   are now being conducted with substantially the same

19   employees and the same records although under a

20   different name.

21        Now, as counsel has indicated and Mr. Smith's

22   testified about an ombudsman program, validation teams,

23   the compliance or adoption of best practices.  As set

24   forth in the trial brief of Countrywide, Countrywide is

25   stating that these actions have been taken to improve

Electronically signed by Marc Eppler (501-188-541-1294)          08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 24 of 52          a69b4c28-9fb3-490a-ae5c-c3ace2ab78c8

1    its processes and the accuracy of its actions in the

2    United States Bankruptcy Court.  During his testimony

3    Mr. Smith also indicated that there were some -- some

4    audit procedure applied to the Countrywide records.

5    And as counsel has mentioned and Mr. Smith testified,

6    there was a third-party audit conducted that was

7    commissioned somehow by counsel for Countrywide on some

8    type of nationwide basis.

9         As far as the request that the -- that there be

10   responsibility imposed upon a specific person, the

11   signature requirement sought by the United States

12   Trustee should not impose any undue burden because

13   Countrywide is saying now that members of a validation

14   team take a second look.  Mr. Smith kept talking about

15   a second set of eyes are reviewing proofs of claim that

16   are being filed, that are prepared, sent back to the

17   entity for further review and therefore there are

18   individuals then at BAC Home Loans now who are actually

19   preparing and reviewing and validating these proofs of

20   claim.  The requirement that a responsible person at

21   Countrywide simply sign those proofs of claim should

22   not impose any undue burden and it provides a sense of

23   assurance, it provides a sense of assurance that the

24   claim that's being presented to the Court, granted if

25   it's being signed and filed by counsel, that it's also

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 25 of 52    a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1   verified by someone at Countrywide.  It gives -- places

2   responsibility on a specific individual.  And again,

3   that was part of the difficulty in the facts during the

4   liability phase where various individuals were simply

5   emailing others asking how can this -- how can this

6   error be corrected.  Here, when a specific individual

7   is signing the proof of claim, that would include

8   responsibility.

9       The audit process is also tailored to the relief

10  found by the Court.  There certainly are records that

11  are available that could be audited.  And again

12  Countrywide has stated that there was some type of

13  similar -- or I won't say similar.  There was an audit

14  conducted at some point.  I believe the testimony was

15  2008.  There are several benefits to the audit process.

16  It will not interfere with the current operations or

17  procedures of Countrywide.  It could identify errors

18  and correct them before they become compounded.  And if

19  the audit reveals further systemic errors,

20  Countrywide's procedures could be improved.

21          THE COURT:  Mr. Wyman, while we're on the

22  topic of audit, you heard my colloquy --

23          MR. WYMAN:  Yes, Your Honor.

24          THE COURT:  -- with Mr. Connop.  In a world

25  of infinite resources the audit might be desirable.

Electronically signed by Marc Eppler (501-188-541-1294)

1  That doesn't describe the world in which we live today.

2  I mean the notion that there be an audit to identify

3  future errors, there'll be errors.  It's a human

4  process.

5      How do you address the proportionality issue?

6          MR. WYMAN:  The -- certainly counsel's made

7  argument as far as the expense that would be involved

8  but there's been no indication of, you know, what --

9  what the expense would be to a Debtor resulting from

10  incorrect proofs of claim or incorrect motions for

11  relief from stay, the quantification for the harm that

12  might befall an individual in Chapter 13 if there are

13  errors that have been or are being committed.  So

14  it's -- the proportionality certainly is a valid -- a

15  valid concern.

16          THE COURT:  Well, and -- and everybody's

17  always trying to figure out the perfect combination of

18  carrots and sticks.  My colleague, Judge Morgenstern-

19  Clarren, has focused I think very usefully on standing

20  issues and did so in a series of hearings on the

21  Court's own motion last summer.  And out of that I'm

22  hoping will come very shortly some useful forms that we

23  will probably adopt by local rule which again will

24  focus on trying to diminish what I'll call the garbage

25  in problem.  Everybody knows garbage in, garbage out.

1  So that people will focus, people who are filing proofs

2  of claim, servicers often being those -- the entities

3  which are causing the filing of proofs of claim and

4  legitimately filing proofs of claim, someone out there

5  has real rights that ought to be protected.  The

6  question -- the question that -- one of the questions

7  that Judge Morgenstern-Clarren was focusing on was, you

8  know, is there any bear there?  Is there any client

9  who's actually requesting that the things that are

10  happening in the Court should happen in the Court.

11  That was not an issue on which the plaintiff in this

12  case chose to focus.  But is there not another route

13  that again, assuming that there's only -- there's only

14  so many dollars to be spent to cause correct

15  information to arrive at the docket, would it not be

16  more appropriate to address these issues through, as we

17  have done for a dozen years in the relief from stay

18  context, to say okay, Movant, please provide this basic

19  information and provide it in this format so that

20  judges who are dealing with hundreds of proofs of claim

21  a month can easily access that information.  With

22  respect to proofs of claim having to do with mortgages,

23  a form that identifies who the claimant is in relation

24  to this bundle of legal rights, is it a servicer?  If

25  so, is the servicer functioning in an agent's role?  Is

Electronically signed by Marc Eppler (501-188-541-1294)

1    it functioning, you know, does the servicer, in fact,

2    have a monetary stake?  Some servicers apparently do.

3    Some servicers are contractually obligated to advance

4    payments to their trustee customer even if they haven't

5    received the payments which again is beyond the scope

6    of anything that was in this record but, you know,

7    wanting to know who, you know, who it is whose rights

8    are trying to be vindicated.  You know, who has the

9    rights?  What are the rights?  That's a very important

10   issue.

11        Would we not -- would we not be better off making

12   it very clear what information we expect and then just

13   making it very clear that if that information isn't

14   provided, appropriate relief may be obtained upon

15   objection.

16             MR. WYMAN:  The -- if I might?  The

17   alternatives we are presenting, these alternatives for

18   the Court's consideration.

19             THE COURT:  Mm-hmm.

20             MR. WYMAN:  The first alternative is similar

21   to a possibility that the Court may be suggesting.  I'm

22   not quite clear.  But the -- the request for

23   verification by someone at Countrywide would include

24   that Countrywide is a creditor or services or servicer

25   with authority to file the claim.  That -- that would

Electronically signed by Marc Eppler (501-188-541-1294)
a69b4c78-9fb3-49ea-ae5c-c3ace2ab78c8

1    be similar to having a form saying --

2              THE COURT:  Right.

3              MR. WYMAN:  -- we are the servicer.  Here's

4    our assignment.  Here's the note.

5              THE COURT:  Right.

6              MR. WYMAN:  So it's similar.  The specific

7    mechanism by which the relief would be imposed is

8    certainly up to the discretion of the Court.  The

9    substance of it would be though that there's the

10   verification and the clear information that would show

11   generally that everything is accurate and correct.

12   That's the entire point.

13             THE COURT:  I'm probably going to have a

14   little more colloquy although I've got an eleven

15   o'clock.  No, it's an 11:30 hearing so -- because

16   there's one issue I want to return to with Mr. Connop

17   as well.

18        But the thing -- the point that -- on which the

19   U.S. Trustee probably has caused the greatest concern

20   to this Court is the systemic practice, and I believe

21   it has been established to be the systemic practice of

22   Countrywide to have outside counsel file -- sign proofs

23   of claim.  And there's a scary legend on the proof of

24   claim form that's almost never in force and that's,

25   again, an issue of resources.  But the issue of having

Electronically signed by Marc Eppler (501-188-941-1294)   08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 30 of 52   a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1    outside counsel who has access to whatever

2    documentation has been put on a particular web site and

3    in theory has the right to ask the client for more

4    information, but how do you know what questions to ask.

5    That is a -- that is problematic to me because I don't

6    think that Countrywide is asking their counsel to go

7    out and do a lot of due diligence and come back and ask

8    questions about -- about the particular proof of claim.

9    They want the proof of claim filed.  They want it filed

10   quickly.  And -- and I -- I have -- I have a lot of

11   sympathy for your argument that, okay, well then let's

12   have somebody -- whoever's signing that proof of claim,

13   let's have them have access to the documents.  And

14   there's no requirement, there's the opposite of a

15   requirement that the proof of claim be signed by a

16   lawyer.  It should be signed by someone who has

17   knowledge of the claim.  I am sympathetic to that.

18   And, you know, but you talk in terms of verification by

19   Countrywide.  I mean isn't it just -- I mean when the

20   person -- whoever's signing that form, they're -- isn't

21   that signature verification?

22             MR. WYMAN:  Yes, Your Honor.

23             THE COURT:  So, I mean, in an already

24   complicated system we don't need to add more layers of

25   complication.  I mean is your request really that the

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 31 of 52    a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1    Countrywide practice of having outside counsel sign

2    proofs of claim be called out as a dangerous practice

3    and if they proceed with it they proceed at their own

4    risk?

5              MR. WYMAN:  The United States Trustee

6    wouldn't frame it that way.  It's simply that the

7    current practice should be changed to have someone else

8    sign.  If the lawyer's going to sign the proof of

9    claim, someone else should also be verifying that proof

10   of claim again for the one-year period because based on

11   these Court's findings about the status of the

12   Countrywide system.  So -- but I wouldn't say it's at

13   their own risk because the danger, of course, is if

14   there's another proof of claim that's incorrect,

15   someone could be harmed by it and so --

16             THE COURT:  What I'm saying though is that,

17   you know, you're asking for relief.

18             MR. WYMAN:  Yes, Your Honor.

19             THE COURT:  And the relief needs to be

20   clearly articulated.  If it's ordered, it needs to be

21   clearly articulated so there can be compliance.  Okay,

22   state for me what I would call the most elegant, in a

23   mathematical sense, the most elegant relief that

24   addresses the signature on the proof of claim.

25             MR. WYMAN:  With leave of Court may I simply

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 32 of 52    a69b4c28-9fb3-40da-ae5c-c3ace2ab78c8

1    repeat what the U.S. Trustee stated in his brief?

2              THE COURT:  You can if you think that's the

3    best answer.

4              MR. WYMAN:  All proofs of claim filed by

5    Countrywide or its successor, BAC Home Loans Services

6    or Servicing, LP, in the United States Bankruptcy Court

7    for the Northern District of Ohio shall include a

8    detailed itemization of payments and credits as a

9    running account and shall be accompanied by a verified

10   statement from a responsible officer with access to the

11   entire account history attesting to the following:  A,

12   Countrywide is a creditor or servicer for a creditor of

13   the Debtor with authority to file the claim.

14   Countrywide has audited the Debtor's loan history.  Any

15   alleged prepetition arrearage is authorized by the

16   operative loan documents and there's factual support.

17   And any alleged charges, costs or fees are separately

18   itemized, authorized by the operative loan documents,

19   have a basis in fact and are reasonably necessary.

20   Also, all requests, objections and pleadings filed by

21   Countrywide in the United States Bankruptcy Court for

22   the Northern District of Ohio, including but not

23   limited to motions for relief --

24             THE COURT:  I want to just stick right now

25   with the proof claim.

Electronically signed by Marc Eppler (501-188-541-1294)

a69b4c28-9fb3-49da-ae5c-c3ace2ab78c8

1            MR. WYMAN:  Okay.

2            THE COURT:  You know, the proof of claim is

3    quite separate from the pleadings.  Pleadings have to

4    be signed by a lawyer.

5            MR. WYMAN:  Yes, Your Honor.

6            THE COURT:  But let's -- let's stick with the

7    proof of claim.  So you talk about an officer.  You

8    don't -- you don't believe that the -- the Bankruptcy

9    Rules allow a corporation such as Countrywide, now BAC,

10   to have an employee who does not have an officer title

11   to sign the proof of claim?

12           MR. WYMAN:  No.  That is entirely

13   permissible, Your Honor.

14           THE COURT:  Okay.  So the word officer,

15   you're not -- that's nota line in the sand for you?

16           MR. WYMAN:  Correct.

17           THE COURT:  It's an informed individual?

18           MR. WYMAN:  Correct.  An employee who has

19   knowledge, who can bind basically the corporation.  It

20   shouldn't be the line technician who's simply looking

21   at the information.  It should be someone who has

22   authority and knowledge about the actual filing.  I'm

23   not saying the line technician doesn't, but it should

24   be someone who's reviewed it, who has a responsible

25   position who can say yes, this is accurate.

Electronically signed by Marc Eppler (501-188-941-1294)
a69b4c28-9fb3-490a-ae5c-c3ace2ab78c8

1            THE COURT:  Well, you want -- you want

2    whoever is signing the form to have thoughtfully gone

3    through a checklist of information and provided it?

4            MR. WYMAN:  That's correct, Your Honor.  And

5    that that person have personal knowledge based on that

6    review.

7            THE COURT:  Please proceed.

8            MR. WYMAN:  The -- may I go to the pleading

9    section, Your Honor?

10           THE COURT:  Absolutely.  If that's where you

11   want to go.

12           MR. WYMAN:  All objections and pleadings

13   filed by Countrywide in the United States Bankruptcy

14   Court for the Northern District of Ohio, including but

15   not limited to motions for relief from stay and

16   objections to confirmation of Chapter 13 plans, shall

17   include a verification from a responsible officer with

18   access to the entire account history attesting that

19   Countrywide is a creditor or servicer for a creditor of

20   the Debtor with authority to file the pleading,

21   Countrywide has audited the Debtor's loan history, any

22   alleged prepetition arrearage authorized by the

23   operative loan documents and its factual support and

24   that the facts in the pleading are accurate.

25           THE COURT:  And so is it fair to characterize

Electronically signed by Marc Eppler (501-188-941-1294)

1    that as whoever would be signing this pleading would

2    have access to the due diligence that would have been

3    done by whoever signed the proof of claim?

4              MR. WYMAN:  Yes, Your Honor.  Yes.  These are

5    corollary suggestions to the Court that again the point

6    is that some responsible person with personal knowledge

7    after reviewing the information would be verifying to

8    the Court that the information is accurate.

9              THE COURT:  Please proceed.

10             MR. WYMAN:  Thank you.  The third element is

11   the one of notice and that simply goes to the ombudsman

12   program that Mr. Smith testified about and that this

13   simply be notified and notice be provided to Debtors

14   and Debtor's counsel about the existence of the program

15   through some Court pleadings.

16             THE COURT:  Well, okay, now Mr. Connop has my

17   sympathy in terms of the issue of communication.  At

18   least to some extent he has it.

19        The issue of communication with a represented

20   individual, that -- that pertains to counsel not

21   communicating with a represented individual but in the

22   Northern District of Ohio we have worked very hard to

23   try and educate folks that it's just really not a good

24   idea to try and represent oneself in bankruptcy.  We

25   have a very low pro se filing level.  So most of our

Electronically signed by Marc Eppler (501-188-541-1294)

1    Debtors are represented by counsel and most often

2    counsel are able to have the most efficient

3    conversation.  Again, efficiency matters a lot in this

4    area and perhaps it's ironic that I'm talking about

5    efficiency as we sort of drill into these issues but

6    these are important issues.  But I -- but I know from

7    my own Chapter 13 dockets the desire that people have

8    to talk about their problems, to talk about them hoping

9    for a miracle.  And so I understand -- I understand

10   that Countrywide may have a very legitimate interest in

11   not having its ombudsman's lines further backed up by

12   people who don't -- they really haven't formulated an

13   issue.  They really don't -- you know, it's just like,

14   well, I can call this number.  If the information about

15   the ombudsman is known to Chapter 13 Trustees and is

16   known to Debtor's counsel, please do the cost benefit

17   analysis for me about why extending it to Debtors is

18   appropriate.

19          MR. WYMAN:  The purpose of course would be to

20   resolve disputes.  Now, if there is a concern that this

21   may somehow violate the attorney-client relationship

22   because a Debtor who's represented by counsel is

23   calling Countrywide, we agree with that.  And

24   therefore, the relief for those Debtors who are

25   represented by counsel we would agree that there

LEGAL ELECTRONIC RECORDING, INC. 216-881-8000

1    shouldn't be a mechanism in place that is designed to

2    interfere with that attorney-client relationship.

3    However, we would request a mechanism that makes sure

4    that Debtor's counsel is informed about the existence

5    of the ombudsman's office, that they at least would

6    know how to contact the ombudsman's office and be

7    provided that information.  And a Court filing listing

8    that would seem to be an efficient mechanism.

9          THE COURT:  And again, is this -- is an

10   adversary proceeding imposing that requirement on one

11   servicer in one district the more -- the appropriate

12   way to address this issue or is this something which is

13   more appropriately addressed for all -- for all

14   servicers?  And I don't know whether all servicers have

15   an ombudsman program

16         MR. WYMAN:  The United -- I do not personally

17   know of but I haven't looked into the issue of

18   ombudsman programs for anyone other than Countrywide so

19   I can't comment on whether there are or not other

20   similar programs.  But I would say that the general

21   concept would appear to be valid in this case because

22   it would provide another check, another mechanism to

23   ensure that any possible errors are corrected and that

24   is the purpose for the request.  I do not have

25   information on the cost or benefit of this notification

Electronically signed by Marc Eppler (501-188-541-1294)

a69b4c28-9fb3-49da-ae5c-c3ace2ab78c8

1    process.

2           THE COURT:  Well, and the ombudsman pro -- I

3    mean ombudsman, again, we all -- we all have our own

4    received information about what -- what a label means

5    and the record is quite thin about this -- the

6    ombudsman program at Countrywide.  But there really --

7    generally, ombudsman programs are meant to address kind

8    of the out of the ordinary problem, not the ordinary

9    problem.  The ordinary problem should be channeled

10   through the regular re -- the regular resolution

11   channels; true or not?

12          MR. WYMAN:  The -- the evidence here at the

13   liability phase was that the normal channels didn't

14   work and that is the reason for the request for

15   notification of the ombudsman's program, because based

16   on this Court's findings.

17          THE COURT:  Please proceed.

18          MR. WYMAN:  Generally, the relief requested

19   by the United States Trustee, again at the discretion

20   of Court, would be for a one-year period subject to a

21   further hearing in one year to look at the issues again

22   to see whether the procedures, if the Court orders

23   procedures, should continue.

24          THE COURT:  Well, let me ask you, Mr. Wyman,

25   you know, again there's not a lot of, you know, there

Electronically signed by Marc Eppler (501-188-541-1294)
a69b4c78-9fb3-49ea-ae5c-c3ace2ab78c8

1    was kind of sketchy evidence.  But audits?  They're

2    not -- they're not without transaction costs.

3        It seems to me that there -- again, that the U.S.

4    Trustee chose the scope of the evidence and this is a -

5    - it's a single case with a Debtor who unfortunately

6    died, didn't complete the plan and shouldn't have had

7    these issues raised in her case but they are -- this

8    case in many ways it's so far from, quote, typical.

9        If the Court were to grant relief with respect to

10   the signature issue with respect to the proof of claim

11   form, with -- part of the problem conceptually is we

12   have this legal system which has its own one-off

13   sanctions, or maybe not.  You know, the -- I've

14   expressed my views in Wingerter about the applicability

15   of Rule 9011 to the proof of claim process.  That

16   proposition is more controversial than I would have

17   imagined but it has its controversies.  But again, you

18   know, we have a kind of crazy quilt because we have --

19   again we have this proof of claim form with this legend

20   that, you know, was scary enough when the fine was

21   $5,000 and now it's been upped, but where's the

22   enforcement if there's a -- if there's an incorrect or

23   whatnot, incorrect -- incorrect is -- incorrect happens

24   in human activity.  False, there's a false claim,

25   where, you know, where do we see the enforcement.  We

Electronically signed by Marc Eppler (501-188-541-1294)

1   don't see a lot of it because you have limited

2   resources.  But if there is a mechanism put in place

3   directing that the defendant -- proofs of claim by the

4   defendant must meet the criteria that you spelled out

5   which is really saying you must comply with the -- with

6   the existing requirements for filing a proof of claim

7   and announcing relief, one-off relief which is really

8   how the legal system works, one-off relief if that

9   doesn't happen.  Is that a way -- is that a way to go

10  in this case?  When I say one-off, a case by case, you

11  know.  If -- and of course the frustration for

12  Bankruptcy Courts is we're seeing -- we're seeing a

13  kind of whatever, you know, that I found my proof of

14  claim.  It's deemed -- it's deemed allowed unless

15  someone objects.  The onus is on someone else to

16  object.  If my information's not correct, whatever.

17  That's not a healthy system.  And the question is how,

18  you know, how do we -- how do we most appropriately

19  within the legal system get over the whatever attitude.

20          MR. WYMAN:  And the request -- the point of

21  the request is to have someone, not only the lawyer,

22  but someone at BAC --

23          THE COURT:  Right.

24          MR. WYMAN:  -- review it and sign it so

25  there's responsibility.

1              THE COURT:  And I'm with you there.  Then

2    okay.  So they do that.  Is that enough relief?  And

3    then we see what -- we see where that takes -- that

4    takes the system in terms of dealing with the onslaught

5    of mortgage claims that will be filed.  I mean it's a

6    tsunami.

7         Your concern is you want -- you want a mechanism

8    to tell you that that's working.  You want the audit

9    mechanism.  But that's an expensive -- it's an

10   expensive mechanism.  And tell me how on the facts, on

11   the evidence in this case it's justified.

12             MR. WYMAN:  Well, the -- certainly the -- the

13   information that was on the proof of claim was

14   completely incorrect.  Had there been an audit done or

15   an audit procedure, all the information would have been

16   reviewed.  Certainly the notes would have been reviewed

17   and the error may not have occurred.

18             THE COURT:  Right.  But how does that then

19   get to -- how -- how does that -- give me one case that

20   would support the scope of the audit you're seeking

21   based upon that kind of evidentiary record.

22             MR. WYMAN:  The -- the only case that is

23   somewhat analogous was the case in a footnote in

24   response to the U.S. Trustee's brief.  I believe it's

25   the Galley case.  And that's -- I say it's analogous.

Electronically signed by Marc Eppler (501-188-541-1294)     08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43     Page 42 of 52     a69b4c78-9fb3-40ea-ae5c-c3ace2ab78c8

1   It's not directly on point.  It's just somewhat

2   similar.  And an order was entered in that case by

3   consent, not -- not by directive.  And that was a case

4   in the District Bankruptcy Court in Massachusetts and

5   that arose out of the Capital One litigation where the

6   United States Trustee had filed a complaint alleging

7   that there were violations of the discharge injunction

8   by Capital One.  And as far as the voluntary consent

9   resolution of that case, there was an agreed order

10  entered which provided some type of audit mechanism of

11  proofs of claim filed by Capital One.  That -- and that

12  is Case No. Adversary Action 08-1272 in re Galley,

13  November 20th, 2008.  That -- that is the only case of

14  which I'm aware that is somewhat similar.  There's

15  another case out of Louisiana dealing with accounting

16  procedures for proofs of claim.  But as far as the

17  audit procedure, that is the only case of which I'm

18  aware but I have to caution that with by consent --

19          THE COURT:  So it really is -- it really is

20  same but very different?

21          MR. WYMAN:  Well --

22          THE COURT:  Or similar but very different.

23          MR. WYMAN:  I mean it's similar but I'm just

24  saying -- but the theory was the same.  The theory was

25  to verify that there was accuracy or that the proofs of

LEGAL ELECTRONIC RECORDING, INC. 216-881-8000

Electronically signed by Marc Eppler (501-188-941-1294)   a69b4c28-9fb3-490a-ae5c-c3ace2ab78c8

1    claim were properly filed.

2              THE COURT:  Let me let you wrap up then

3    without further interruption and then I want -- I want

4    to return to Mr. Connop very briefly.

5              MR. WYMAN:  The United States Trustee again

6    requests that the Court, at its discretion, enter

7    appropriate relief.  And the U.S. Trustee has nothing

8    further to say.

9              THE COURT:  Thank you.  Mr. Connop, I do want

10   to understand the stipulation that has been filed.

11   Bank of America acquired Countrywide, I believe, after

12   this litigation was filed.  Countrywide continued to

13   operate for a period of time as a subsidiary and I now

14   understand that something has changed.  Were the Court

15   to order any kind of relief with respect to ongoing

16   operations of what had been Countrywide, who is the

17   party defendant right now?

18             MR. CONNOP:  Your Honor, Countrywide Home

19   Loans, Inc. is the party defendant.

20             THE COURT:  And what is Countrywide Home

21   Loan -- has Countrywide Home Loans, however, just

22   shifted everything it's doing over to a limited

23   partnership and so any relief that I were to order that

24   would be prospective would be without meaning.

25             MR. CONNOP:  Your Honor, the -- we've

Electronically signed by Marc Eppler (501-188-941-1294)

1    endeavored as part of the stipulation to accurately,

2    and I think we did, describe the accuracy with accuracy

3    the manner in which the servicing operations of

4    Countrywide Home Loans, Inc. have been transferred

5    post-acquisition.  As we indicated, there is a sub-

6    servicing relationship, as I understand it, with BAC

7    Home Loans Servicing, LP, which is the former

8    Countrywide Home Loans Servicing, LP.

9            THE COURT:  So Countrywide, the named

10   defendant, still has the servicing rights but it has --

11   it has contracted with an affiliate to further provide

12   that servicing.  They're providing their -- their

13   customers with the service by subcontracting to an

14   affiliate is what you're saying?

15           MR. CONNOP:  Your Honor, I don't want to

16   overstate the situation because -- well, I'm not under

17   oath and I don't want to misrepresent anything to the

18   Court.  Some servicing rights to some loans are held by

19   Countrywide Home Loans -- or I should say at the time

20   of the filing of the lawsuit some servicing rights

21   relating to other loans are held by Countrywide Home

22   Loans Servicing, LP.  It is my understanding that the

23   two entities had subservicing agreements, so one could

24   service loans for the other.  The operational

25   mechanism, as I understand it for both companies was

Electronically signed by Marc Eppler (501-188-541-1294)    08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 45 of 52    a69b4c28-9fb3-40da-ae5c-c3ace2ab78c8

1    the same.  They used the same computer systems.  But

2    the effect of the transactions that occurred subsequent

3    to the O'Neal lawsuit resulted in Countrywide Home

4    Loans being a subsidiary, I hope I state this right, of

5    Bank of America NA.

6              THE COURT:  Do you see a little bit of irony

7    here?  I mean, you know, we're always hearing when we,

8    you know, at our CLE programs about how Debtors don't

9    even know who they're dealing with.  You know, their

10   mortgage has been assigned and assigned and assigned

11   and they're trying to figure out who they should send

12   their checks to.  Do you have any sympathy for this

13   Bankruptcy Judge feeling a little bit like, you know --

14   I, you know, this -- I have no illusions that this was

15   done because of some lawsuit in Akron, Ohio.  But

16   please at this point tell me if I were to issue relief

17   having to do with the signature on the proof of claims

18   filed by Countrywide and entities now -- there was a

19   portfolio of 130,000 mortgages that Countrywide had

20   been addressing; is that correct?

21             MR. CONNOP:  Your Honor, at present it is my

22   understanding that BAC Home Loans Servicing services

23   approximately 130,000 loans in bankruptcy nationwide.

24             THE COURT:  And is BAC Home Loans Servicing,

25   LP the successor to Countrywide Home Loans?

Electronically signed by Marc Eppler (501-188-541-1294)

1            MR. CONNOP:  I think as a matter of law it is

2      not the successor to Countrywide Home Loans.

3            THE COURT:  Okay.

4            MR. CONNOP:  It is Countrywide Home Loans

5      Servicing, LP by change of name.  It is my -- it is my

6      understanding and I think it's reflected in the

7      stipulation that servicing rights for home loans have

8      been assigned, and the stipulation speaks for itself,

9      please understand, have been assigned under a sub-

10     servicing agreement to BAC Home Loans Servicing, LP.

11     And, Your Honor, with all sincerity, in response to

12     Your Honor's question, I hope -- Rule 65 will govern to

13     whom the Court directs that this injunction, should it

14     be entered, applies.  I cannot bind BAC Home Loans

15     Servicing, LP.  They are not my client.  Nor can I bind

16     Bank of America, NA.  I represent before Your Honor

17     Countrywide Home Loans, Inc.

18            THE COURT:  On that topic I'll hear from the

19     U.S. Trustee.

20            MR. WYMAN:  Mr. Smith testified basically

21     that going forward proofs of claim would be filed by

22     and on behalf of BAC Home Loans Servicing, LP for the

23     former Countrywide Home Loans loans.  So the agreement

24     that Countrywide had to service loans, that agreement,

25     under the stipulation, is transferred to BAC Home Loans

Electronically signed by Marc Eppler (501-188-541-1294)

1   Servicing, LP, and therefore, any relief that this

2   Court may enter, the U.S. Trustee would request apply

3   to and bind BAC Home Loans Servicing, LP because BAC

4   Home Loans Servicing, LP is in privity to Countrywide

5   Home Loans, Inc. regarding the servicing of these

6   loans.

7           THE COURT:  And so how do you respond to Mr.

8   Connop's statement that his client is the named

9   defendant in this litigation and there's been no -- if

10  this change in the internal organization of various

11  BofA subsidiaries happened after -- or at least was

12  announced to the public after the liability hearing,

13  reading the stipulation do you think that this Court

14  can enter meaningful relief in this litigation.

15          MR. WYMAN:  Yes, because the stipulation

16  provides that the servicing rights have been assigned

17  or transferred to BAC Home Loans Servicing, LP and

18  therefore any relief that could be or may be imposed

19  against Countrywide may also be imposed against its

20  privities.  And that, in conjunction with Mr. Smith's

21  testimony that going forward the proofs of claim for

22  these services loans will be in the name of BAC Home

23  Loans Servicing, Inc., does provide authority to enter

24  relief as to Countrywide Home Loans, Inc. as well as

25  BAC Home Loans Servicing, LP.

Electronically signed by Marc Eppler (501-188-941-1294)     08-05031-mss   Doc 96   FILED 05/26/09   ENTERED 05/26/09 11:02:43   Page 48 of 52     a69b4c28-9fb3-490a-ae5c-c3ace2ab78c8

1              THE COURT:  So it would be with respect to

2     those entities with whom the named defendant had

3     servicing arrangements which it has now subcontracted

4     to its affiliate?

5              MR. WYMAN:  That is correct.  The United

6     States Trustee is not requesting that any relief be

7     granted against BAC Home Loans Servicing, Inc. for any

8     loans other than the ones it's servicing through a

9     contractual arrangement with the Countrywide Home

10    Loans, Inc. entity.  So in other words, if BAC Home

11    Loans Servicing, Inc. is servicing loans on behalf of

12    someone else apart from the existing Countrywide Home

13    Loans Servicing, Inc. portfolio, the United States

14    Trustee is not requesting that relief.  It's simply

15    those loans that it's servicing under an agreement with

16    Countrywide Home Loans, Inc.

17             THE COURT:  One more -- one more question

18    with respect to remedies.  You've asked for an auditor.

19    Would a lesser-included form of relief be a designated

20    organization or entity that would receive complaints

21    about the failure of the named defendant and its

22    privities to abide any Court order -- any injunction

23    that the Court were to issue?  With -- with the

24    reporting out from that person or entity in six months

25    to determine whether that -- that's a fully effective

Electronically signed by Marc Eppler (501-188-541-1294)

08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 49 of 52
a69b4c28-9fb3-49ea-ae5c-c3ace2ab78c8

1  form of relief.

2          MR. WYMAN:  The United States Trustee would

3  have no objection to that form of relief but the United

4  States Trustee would not view that as a substitute for

5  the relief the United States Trustee's requesting.

6          THE COURT:  Let me hear from Mr. Connop on

7  that issue.

8          MR. CONNOP:  Yes, Your Honor?

9          THE COURT:  You know, as I said in the

10  colloquy, I have sympathy for the notion that audits

11  are expensive and not nearly as effective as one would

12  hope that they could be.  Do you believe that your

13  client would be deprived of due process if the Court

14  were to put in place a reporting mechanism should

15  anybody feel that whatever injunctive relief the Court

16  might have ordered were not being fully provided?

17          MR. CONNOP:  Your Honor, I haven't analyzed

18  it in the context of the constitutional due process

19  issue.  I do believe that such an order would be

20  outside the Court's jurisdiction to enter, and to that

21  extent, whether it -- I guess that carries with it an

22  implication --

23          THE COURT:  Why is it outside of my

24  jurisdiction to order?

25          MR. CONNOP:  Because it's not within your

Electronically signed by Marc Eppler (501-188-541-1294)

1    jurisdiction as an Article 1 Court to do so.  It is a

2    punitive form of relief.  No portion of the Bankruptcy

3    Code authorizes the imposition of that injunctive

4    relief and I think --

5              THE COURT:  Article 1 Judges cannot -- cannot

6    take action to avoid abuse of process?

7              MR. CONNOP:  Article 1 Judges can impose

8    sanctions to coerce compliance with an outstanding

9    Court order or to compensate a party injured by another

10   person's conduct.  This does not fall within that

11   category of relief that is available to an Article 1

12   Judge.

13             THE COURT:  I appreciate your thoughts on

14   that.

15        All right.  With that I believe we are concluded.

16   I'll take the matter under advisement and thank you all

17   for interesting issues.

18             (END OF PROCEEDINGS)

19

20

21

22

23

24

25

Electronically signed by Marc Eppler (501-188-541-1294)      08-05031-mss    Doc 96    FILED 05/26/09    ENTERED 05/26/09 11:02:43    Page 51 of 52      a69b4c28-9fb3-40ea-ae5c-c3ace2ab78c8

1   State of Ohio          )

2   Cuyahoga County        )

3

4

5

6                          CERTIFICATE

7

8

9        I, Marc Eppler, a Notary Public, within and for the

10   State of Ohio, do hereby certify that the above

11   transcript is a true and accurate record of the hearing

12   held before the HONORABLE MARILYN SHEA-STONUM.  This

13   record was prepared from an audio recording provided by

14   the Court.

15        IN WITNESS WHEREOF, I have hereunto set my hand and

16   seal of office in Cleveland, Ohio on this 22nd day of

17   MAY, A.D., 2009.

18

19

20

21   _____
          MARC EPPLER
22        Notary Public - State of Ohio
          my commission expires 9-14-2013

23

24

25

LEGAL ELECTRONIC RECORDING, INC. 216-881-8000